**EXHIBIT 2**
**TO**
**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

David R. Carpenter
drcarpenter@sidley.com
Caleb J. Bowers
cbowers@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Gordon D. Todd*
gtodd@sidley.com
Richard W. Smith*
rwsmith@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Pro hac vice applications forthcoming*

Attorneys for Plaintiff
NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF NEBRASKA, ET AL.,<br>Plaintiffs,<br>v.<br>ZOE HELLER, in her official capacity as Director of the CALIFORNIA DEPARTMENT OF RESOURCES RECYCLING & RECOVERY, CIRCULAR ACTION ALLIANCE, INC.,<br>Defendants. | Case No. 2:26-cv-02214-CKD<br><br>**DECLARATION OF ED ALLEN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**DECLARATION OF ED ALLEN**

I, Ed Allen, declare the following:

1. I am President of WCP Solutions ("WCP"). I submit this declaration in support of the National Association of Wholesaler-Distributors' Motion for a Preliminary Injunction in the above-captioned case. The following facts are within my own personal knowledge and, if called upon as a witness, I could and would competently testify thereto.

2. WCP is a regional wholesale distributor with approximately $350 million in annual revenue. WCP's business network includes distribution into nine states. That network includes California, where WCP operates two product divisions located in Redding and Sacramento. WCP is also pursuing expansion into the Los Angeles market, and is investing significant resources into that endeavor. WCP generates approximately $30 million in revenue from its California business.

3. WCP purchases finished, packaged products from suppliers and sells those products to customers, the majority of whom are end users. WCP does not control primary packaging design or materials for the vast majority of the products it distributes. In limited instances, WCP may apply secondary or tertiary packaging necessary for handling and shipment, such as stretch film or tape, but it does not undertake product-level packaging redesign.

4. Although WCP generally does not make packaging decisions, it has been treated as a "producer" under the Plastic Pollution Prevention and Packaging Producer Responsibility Act ("Act"), California's Extended Producer Responsibility ("EPR") program for plastics and packaging. Accordingly, WCP has been required to join Circular Action Alliance ("CAA"), the third-party organization chosen as the Producer Responsibility Organization for this EPR program.

5. There remains substantial confusion in the marketplace about which entity is considered the producer for any given product—particularly for items where the seller has not acknowledged responsibility as the brand owner. That confusion extends across suppliers and customers and creates a risk of duplicative reporting.

6. Operating a distribution business in California and shipping products into the state from out-of-state creates considerable confusion under the Act. The same is true for products

shipped into California that are subsequently moved out of state, whether by WCP or one of its downstream customers. Many products arriving at WCP's facilities in Redding or Sacramento are transferred to other locations, including states that lack packaging EPR programs or are currently implementing their own EPR programs with different requirements than California's EPR. Also, given the amount of food service packing transiting Sacramento, California, for WCP's business, the EPR requirements will be particularly impactful there.

7. WCP competes in nine states and cannot viably segregate product at scale by destination state to prevent EPR cost spillover and double counting. One potential methodology for trying to track and accrue against California's EPR fees is, by reference to products received at WCP's California facilities. However, many of these California-bound products are later transported out of state by downstream entities without notice to WCP, meaning that our California intake can exceed the portion of material ultimately consumed in California. There is no apparent mechanism under California's EPR program to confirm which upstream producer has paid fees for a given product, or to reconcile cross-border movements, increasing the risk of overpayment by WCP. The resulting increases in fees, and higher costs from our suppliers, hinders our ability to maintain competitiveness especially when transferring products from or through California to other states.

8. Overpayments further present a serious risk to our business competitiveness when considered alongside duplicative reporting and supplier/customer fees being charged for EPR. Duplicative reporting occurs when suppliers or customers charge their own EPR fees (i.e., to recoup EPR fees they are themselves paying) while WCP is unaware that these other producers have claimed responsibility for the product. This is because neither California nor CAA provides any mechanism to determine which products have been reported without individually contacting every potential supplier and customer in our supply chain—and determining that supplier/customer's potential producer responsibility in relation to our own.

9. Suppliers are likely to respond to California's EPR mandate in a similar way as suppliers have responded in other states that have passed EPR mandates: by implementing

substantial price increases, often without identifying whether increases reflect EPR fees or other factors. In WCP's experience with state packaging EPR thus far, suppliers are rarely forthcoming in providing the product and packaging details necessary for WCP to determine which line items on their invoices reflect EPR fees. WCP has asked suppliers to break out EPR fees as separate line items; some can, but many cannot due to business system limitations. As a result, WCP cannot discern whether or to what extent supplier invoices include EPR charges, thereby preventing accurate handling of fees and WCP's ability to communicate clearly with its own customers.

10. The EPR fees that WCP has had to begin charging in Oregon—where WCP also operates and which has its own EPR program—as well as the price increases we are experiencing from our suppliers/manufacturers, put our company at an extreme competitive disadvantage. In an effort to maintain price parity across product categories and geographies, WCP implemented a standardized price increase across all our products, including for products not subject to EPR. That increase has still not been sufficient to offset supplier increases and EPR charges. WCP's margins have eroded as it has been unable to fully capture rising costs from customers, particularly for sales shipped outside of Oregon where competitors are not subject to similar fees. WCP estimates that similar measures will be required in California, and similar impacts will likely result, given that a whole new state EPR program is being added onto the existing Oregon program that includes its own new fees and obligations. Additionally, when WCP moves products out of California into states without EPR, WCP will be forced to either pass along those fees or absorb them itself, thereby devastating our margins and making WCP uncompetitive in the marketplace (as has already been the case in Oregon).

11. WCP will need to engage suppliers to identify their status as producers under California's EPR and obtain detailed packaging data that California requires producers to report, such as material types and weights. WCP anticipates that many suppliers will be unable or unwilling to provide complete data—many suppliers treat packaging specifications as proprietary—or simply unresponsive to our efforts to obtain information. WCP bases this belief on our interactions with suppliers in Oregon after the passage of Oregon's EPR, and these same

components of information are required to be reported in California. WCP's inability to obtain information from suppliers makes it impossible to accurately report product and packaging information.

12. Other difficulties with tracking packaging characteristics abound. For example, the use of tertiary packaging such as tape and stretch film requires weight calculations that are subjective and impracticable to track at scale. In many cases there is simply no practicable way for WCP to quantify inputs reliably. The structural features of the Act are similar to Oregon's packaging EPR law such that WCP expects to experience the same types of difficulties in California as it has in Oregon.

13. WCP anticipates expending substantial internal resources in order to attempt compliance with the Act. These efforts are largely additive to WCP's efforts to comply with Oregon's packaging EPR law, because the California program differs in its covered material categories and requirements for compliance. WCP's company officers and staff personnel will need to dedicate significant time throughout the year to navigating California's EPR requirements, coordinating with buyers in California, troubleshooting supplier reporting, and responding to inconsistent treatment of EPR charges on invoices. This will substantially disrupt day-to-day operations. WCP was faced with these challenges in navigating Oregon's EPR requirements, and estimates that complying with California's EPR mandate will require a similar level of resources, particularly to determine the differences between the EPR programs and WCP's corresponding obligations.

14. Based on the factors above, the Act will inhibit our ability to service surrounding states with competitive pricing and some of our suppliers will likely be forced to significantly raise their California pricing to cover EPR fees. The EPR law also gives an unfair competitive advantage to smaller business that qualify for California's "small producer" exemption for businesses with gross sales of less than one million dollars ($1,000,000) in the state because they are exempt from reporting.

15. Oregon's program recently doubled certain packaging fees from CAA's original

estimate, leaving WCP guessing about forward exposure (in addition to present-day impacts). Fee assessments rely on 2024 data even for upcoming periods, failing to account for material changes in 2025 that may reduce packaging impacts. California's EPR program appears to similarly rely on retroactive data in setting fees. This means that WCP's ability to plan for and mitigate fees through packaging changes is constrained because WCP does not control most packaging decisions, and, where alternatives exist, they frequently conflict with food safety, shelf-life, or performance requirements.

16. The practical difficulties of California compliance are exacerbated by interstate inconsistencies. California's EPR mandate is different from the EPR mandates of other states such as Colorado and Oregon, including with respect to definitions of recyclability and treatment of plastic substrates. WCP's operations across these states necessitates compliance with each discrete EPR mandate, and California's departure from the standards used by other states will necessitate additional costs to WCP and suppliers..

17. WCP's beverage-related supply chain highlights additional burdens. Numerous California wineries ship product to other states and rely on protective inserts and additional packaging for export. The current system provides no clear mechanism for accounting for this export packaging, which is required for safe interstate transport but may be charged as California-bound volume without detailed measures to track and account for these goods downstream. In particular, California requires documentation to be kept to demonstrate that transport of materials out-of-state occurred. This type of tracking is not practicable in many instances once products leave WCP's control.

18. Competitive dynamics further disadvantage WCP. Several competitors appear not to be reporting at all or may qualify for small producer exemptions; some suppliers are pushing the entire burden onto WCP despite being the appropriate first-obligated producer for branded goods. This asymmetry in reporting and cost allocation undermines parity and harms WCP's ability to compete, particularly where fees assessed in California must be reflected in prices for sales routed outside California to states without EPR.

19. The brand owner—and not distributors—can control decisions about product packaging and materials. In practice, under the current EPR scheme, the combination of unclear producer hierarchies, lack of transparent confirmation of upstream payments, retroactive and changing fee levels, and inconsistent supplier billing practices, forces WCP to shoulder costs that it neither controls nor can reliably verify.

20. Based on all the above, California's EPR program imposes burdens on WCP that are unworkable given WCP's role in the supply chain, the thin margins in distribution business, and the realities of multi-state distribution. The program's structure results in fees and supplier pass-throughs that exceed margins on many products, creates substantial risk of double counting and overpayment, and deprives WCP of a reliable means to validate or contest charges.

21. WCP treats its information regarding pricing, margins, customer prices, and revenue are kept confidential in the ordinary course of business. WCP keeps such information confidential for the benefit of its customers and for its own strategic purposes. As a result, WCP keeps strict controls on how such information may be accessed internally. If such information were publicly disclosed, it would expose WCP's business strategy to competitors, impair WCP's relationships with its customers, and harm WCP's business prospects.

I hereby declare under penalty of perjury of the laws of the United States that the foregoing statements are true and correct.

Executed on this 1st day of July 2026, in Oregon.

Edward R. Allen

Ed Allen